James Ethan MILLS, Petitioner,

v.

Carl S. ANDERSON, Warden,
Respondent.

No. C–1–96–423.

United States District Court,
S.D. Ohio,
Western Division.

Feb. 12, 1997.

Glenn Virgil Whitaker, Vorys, Sater, Seymour & Pease, Cincinnati, OH, Randall Lee Porter, State Public Defender Office, Fed. Death Penalty Resource Center, Columbus, OH, Dale Andrew Baich, Asst. Fed. Public Defender, Pheonix, AZ, for Petitioner.

James Ethan Mills, Mansfield Correctional Inst., Mansfield, OH, pro se.

Carl W. Anderson, Mansfield Correctional Inst., Mansfield, OH, pro se.

Stuart W. Harris, Ohio Atty. Gen., Capital Crimes Section, Columbus, OH, Michael Louis Bachman, Ohio Atty. Gen., Capital Crimes Section, Cincinnati, OH, for Respondent.

## ORDER DENYING IN PART RESPONDENT'S MOTION TO APPLY THE ANTITERRORISM & EFFECTIVE DEATH PENALTY ACT OF 1996

DLOTT, District Judge.

This matter is before the Court for determination of whether Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996 applies to this case. For reasons set forth more fully below, the Court finds that Chapter 154 does not apply and hereby **DENIES** in part Respondent's Motion to Find the Antiterrorism and Effective Death Penalty Act of 1996 Applicable (doc. # 11).

## I. BACKGROUND

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (hereinafter "the Act") which amends portions of 28 U.S.C. §§ 2241 et seq., governing habeas corpus proceedings in federal courts. The Act not only amended the existing habeas corpus provisions contained in Chapter 153 of Title 28, but also promulgated a series of new provisions applicable to death penalty habeas corpus cases, codified at Chapter 154 of Title 28 (28 U.S.C. §§ 2261–2266). On June 24, 1996, this Court issued an order directing the parties to submit briefs regarding the applicability of Chapter 154 to the instant case.[1]

Petitioner, a state prisoner who has been convicted of aggravated murder and sentenced to death by the State of Ohio, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This Court first received notice of Mills' "intent to file habeas corpus petition" on April 18, 1996 (doc. # 3). The President signed the Act into law on April 24, 1996. The Act does not contain an express statement of a generally applicable effective date, however, an uncodified section (§ 107(c)) provides that: "Chapter 154 of title 28, United States Code (as added by subsection (a)) shall apply to cases pending on or after the date of enactment of this Act." Since this case was pending on the relevant date (April 24, 1996), Mills' petition is subject to Chapter 154 of the Act.

## II. DISCUSSION

### A. Chapter 154 "Opt-in" Requirements

The Court has found that Mills is subject to the provisions of Chapter 154. In order for Chapter 154 to become operative, however, the State must comply with Title 28 U.S.C. § 2261(b) and (c), which imposes requirements for appointment of counsel for petitioners seeking post-conviction review of

---

1. In addition to assertions regarding Chapter 154, the Respondent's motion includes arguments regarding the applicability of the amendments to Chapter 153 to the instant case. In light of the Supreme Court's granting certiorari of Lindh v. Murphy, 96 F.3d 856 (7th Cir.1996), cert. granted in part, —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997) (determining whether Act's standard of review provisions apply retroactively), the Court will defer ruling on that argument at this time.

their capital sentences in the State court system. When Chapter 154 is applicable, capital cases covered by it are subject to an expedited 180–day review procedure. States can "opt-in" to this expedited review procedure by meeting the terms of § 2261. These provisions of the Act are intended to address the issues of delay and abuse in federal habeas filings. The designers of the Act sought to encourage states to provide competent counsel in state collateral review in exchange for a mechanism which ensures expedited and final review of federal habeas corpus petitions. *House Comm. on the Judiciary, Effective Death Penalty Act of 1995,* H.R.Rep. No. 23, 104th Cong., 1st Sess., 1995 WL 56412 (1995) at *16 ("House Report").[2] This arrangement was clearly intended as a "quid pro quo." *Id.* Therefore, the expedited review procedures of Chapter 154 are available to a state *only* if it has a capital case process in conformity with 28 U.S.C. § 2261, which provides in pertinent part:

(a) This chapter shall apply to cases arising under section 2254 brought by prisoners in State Custody who are subject to a capital sentence. It shall apply only if the provisions of subsections (b) and (c) are satisfied.

(b) This chapter is applicable if a State establishes by statute, rule of its court of last resort, or by another agency authorized by State law, a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have otherwise become final for State law purposes. The rule of court or statute must provide standards of competency for the appointment of such counsel.

(c) Any mechanism for the appointment, compensation and reimbursement of counsel as provided in subsection (b) must offer

counsel to all state prisoners under capital sentence and must provide for the entry of an order by a court of record—

(1) appointing one or more counsel to represent the prisoner upon a finding that the prisoner is indigent and accepted the offer or is unable competently to decide whether to accept or reject the offer;

(2) finding, after a hearing if necessary, that the prisoner rejected the offer of counsel and made the decision with an understanding of its legal consequences: or

(3) denying the appointment of counsel upon a finding that the prisoner is not indigent.

(d) No counsel appointed pursuant to subsections (b) and (c) to represent a State prisoner under capital sentence shall have previously represented the prisoner at trial or on direct appeal in the case for which the appointment is made unless the prisoner and counsel expressly request continued representation.

Ohio must comply with the terms of § 2261 in order to "opt-in" to the expedited review procedures of Chapter 154.

## B. Analysis

### 1. Appointment of Counsel

■ Ohio law does not include a mechanism that provides counsel for all indigent capital prisoners in state post-conviction proceedings in accordance with the terms of § 2261. The Ohio Public Defender Act, codified in the Revised Code [R.C.], Chapter 120, does not meet the requirements of § 2261. Although R.C. § 120.16(A)(1) requires that the county public defender provide representation to indigent prisoners in state post-conviction proceedings, § 120.16(D) provides that "the county public defender shall not be required to prosecute any appeal, post-conviction remedy, or other proceeding, unless he is first satisfied there is *arguable merit* to the proceeding" (emphasis added).[3] Thus,

---

2. Although the House issued this report in connection with the proposed 1995 Act, the relevant portions of the proposed 1995 Act are identical to the legislation signed into law.

3. Similarly, the state public defender is not required to proceed in any action unless he or she "first is satisfied that there is arguable merit to the proceeding." R.C. 120.06(B). *See also* R.C.

this statutory right to representation does not attach unless the public defender finds that the claim has arguable merit.

In *State v. Crowder*, 60 Ohio St.3d 151, 573 N.E.2d 652 (1991), the Supreme Court of Ohio affirmed this interpretation, finding that although a post-conviction petitioner has a statutory right to representation, "[t]he General Assembly has provided the public defender with the authority and discretion to refuse to represent an indigent prisoner seeking post-conviction relief, if the public defender, after examining the issues raised by the petitioner, concludes that the issues do not have *arguable merit.*" *Id.* at 152–53, 573 N.E.2d 652 (emphasis added). Since neither the Ohio Public Defender, nor the county public defenders are required by statute to accept a case which they deem lacks arguable merit, an indigent prisoner is not guaranteed post-conviction representation. Therefore, Ohio is not complying with the requirements of the Act.[4]

■ The Respondent's argument that the Public Defender Commission has never refused representation in a capital case on the basis of no arguable merit, and that every death-sentenced defendant who has initiated a post-conviction petition in Ohio has been represented by counsel—even assuming these factual assertions to be correct—is to no avail. For states to "opt-in" to the expedited review procedures of Chapter 154, they are required to offer counsel, by statute, to "*all* State prisoners under capital sentence." 28 U.S.C. § 2261(c) (emphasis added). The provisions of § 2261 are drafted with mandatory language and neither substantial compliance nor de facto compliance is sufficient.

The Respondent also argues that recent amendments to the Ohio Revised Code quali-

fy Ohio as an opt-in state.[5] In an apparent attempt to preclude a finding that these amendments may not be considered because they occurred after the initiation of petitioner's habeas case, Respondent argues that these amendments amount to a declaration of existing practice in death penalty cases as opposed to a change in existing procedures.

First, the Court notes that it is unpersuaded that these amendments are merely a "declaration of existing practice." If these amendments do amount to a change in the law from prior practice at the time petitioner's case was initiated, then it would seem inappropriate to interpret them as making Ohio an opt-in state for purposes of the instant case.

However, even if the Court accepts petitioner's argument that the amendments merely clarify existing practice, the Respondent's argument that Ohio is an opt-in state still fails. The amendments make no change in the discretion accorded to public defenders to reject cases which lack arguable merit, and the amendments do not bring Ohio into compliance with the entry of court order, reasonable compensation, or other requirements of § 2261 to be discussed below. Therefore, regardless of the applicability of the amendments to the Revised Code, Ohio does not qualify as an opt-in state.

### 2. Entry of Court Order

■ The method for appointment of counsel in Ohio does not provide for the "entry of an order by a court of record" reflecting that the offer of counsel was made, along with a finding of indigence and acceptance or rejection of the offer by the prisoner as required by § 2261(c). The Court rejects Respondent's argument that R.C.

120.26 (same language regarding the joint county public defender).

4. The timing of appointment of counsel under the Ohio process may also preclude the applicability of Chapter 154. The Ohio statutes provide for the appointment of counsel once the post-conviction petition has been filed. However, in *McFarland v. Scott*, 512 U.S. 849, 854–58, 114 S.Ct. 2568, 2572–73, 129 L.Ed.2d 666 (1994), the Supreme Court held that the term "post-conviction proceedings," as used in 21 U.S.C. § 848(q) was intended to encompass the stage of initial

preparation of a habeas corpus petition in federal court. The Court notes that a similar construction of the term in the instant case might well be appropriate.

5. In Senate Bill 258, the Ohio General Assembly amended Revised Code § 2953.21. As revised, subsection (I)(1) states in part: "If a person who has received the death penalty intends to file a petition under this section, the court shall appoint counsel to represent the person upon a finding that the person is indigent . . ."

§ 120.33(A)(2)(b), which provides that an indigent may request appointment of counsel, and that the court may "by signed journal entry recorded on its dockets, enter the name of the lawyer appointed," is sufficient. This provision does not assure that there will be an entry of a court order in every case. The reason for this technical requirement of § 2261 is "to establish a clear point in time to determine the applicability of sections 2257 and 2258," and to "assure that a full record exists showing which state prisoners have appointed counsel and which do not." Ad Hoc Committee on Federal Habeas Corpus in Capital Cases, Report on Habeas Corpus in Capital Cases, 45 Crim. L. Rep. (BNA) 3242 (Sept. 27, 1989) ("Powell Committee Report").[6] Therefore, this requirement is not insignificant, and the failure of R.C. § 120.33(A)(2)(b), or any other state statutes, to fulfill the intent or meet the specific procedural structure set forth in § 2261(c) cannot be waived.

### 3. Payment of Reasonable Compensation for Counsel

■ The Ohio post-conviction process does not provide for counsel's "compensation and payment of reasonable litigation expenses" within the meaning of § 2261(b). Under R.C. 120.33(A)(4) and (5), counties are subject to maximum amounts but not minimums in setting fee schedules for appointed counsel. The fee schedules set by many Ohio counties for post-conviction cases are unreasonably low. Furthermore, the ability on the part of the Ohio Public Defender to withhold reimbursement from counties that expend too little for attorneys appointed in post-conviction proceedings does not remedy this problem. Thus, Ohio is not in compliance with the reasonable compensation requirement of § 2261(b).

### 4. Standards of Competency

■ The Ohio process also fails to provide by statute or rule of the Supreme Court "standards of competency for the appoint-

ment of [post-conviction] counsel" as required by § 2261(b). The Respondent argues that under Ohio Supreme Court Rule 65(IV)(A) of the Rules of Superintendence for Courts of Common Pleas ("Rule 65"), post-conviction attorneys must meet standards of competency. Rule 65 provides that: "Only counsel who have been certified by the Committee shall be appointed to represent indigent defendants charged with or convicted of an offense for which the death penalty may be or has been imposed."

Although the rule does not specifically address post-conviction counsel, the Respondent argues that Ohio Administrative Code (O.A.C.) § 120–1–13 provides that Rule 65 applies "in an indigent capital case at the trial, appellate and/or post-conviction levels." What § 120–1–13 actually says is that in reviewing a request for reimbursement from a county, the Ohio public defender commission shall review the request to ensure that the requirements of Rule 65 are met. This rule for *reimbursement* is what is "effective for all appointments of counsel in capital trial, appellate, and/or post-conviction cases." O.A.C. § 120–1–13.

The language of Rule 65 itself does not require that counsel in post-conviction proceedings must have minimum qualifications. Under the terms of the rule, only attorneys appointed to represent indigent capital defendants at trial or on direct appeal must be certified in accordance with Rule 65. Furthermore, the affidavit of Harry Reinhart, a member of the Rule 65 Committee, indicates that the five member committee, appointed by the Supreme Court of Ohio, the Ohio State Bar Association and the Ohio Public Defender Commission, debated whether to extend certification requirements to counsel in post-conviction proceedings and unanimously voted against extending the requirements to post-conviction proceedings. (Reinhart Aff. at A–31 through 33). The Court therefore concludes that Ohio does not provide "standards of competency" for attorneys appointed to represent capital defendants in

---

**6.** In 1988, Chief Justice Rehnquist established a Commission chaired by former Justice Powell to examine issues related to death penalty appeals. Many of the Powell Committee recommendations were referenced and incorporated into the House Report on the Effective Death Penalty Act of 1995.

 

state post-conviction proceedings, as required by § 2261(b).

### 5. Different Counsel at Post–Conviction

■ The Ohio process also does not preclude appointment of the same counsel on post-conviction as represented the petitioner at trial or on direct appeal, as required by § 2261(d).[7] The Respondent appears to argue that, because Ohio requires ineffective assistance of appellate counsel claims to be raised in a delayed motion for reconsideration at the state court of appeals, and because Ohio law precludes such claims from being raised in a post-conviction action, Ohio complies with the prohibition of § 2261(d). The Respondent claims that since the intent of the provision is to avoid conflicts of interests, the separate procedure under Ohio law for pursuing ineffective assistance of counsel claims complies with the prohibition of § 2261(d). This argument is not well-taken. The language of the statute clearly requires that different counsel be appointed unless the prisoner and counsel both request otherwise. Neither this special procedure, nor any Ohio statute or rule of court precludes the appointment of the same attorney for the trial, direct appeal, and post-conviction action of a capital defendant. Therefore, the Ohio process does not meet the requirements of § 2261(d).

### III. CONCLUSION

The Court finds that Ohio's procedures for providing counsel in post-conviction proceedings fail to comply with § 2261(b) and (c) in the respects outlined above. Accordingly, this Court concludes, as have other federal courts within Ohio, that Ohio's post-conviction procedures do not meet the requirements of § 2261, and Ohio is prevented from "opting-in" to the expedited procedures of Chapter 154. *See Rojas v. Anderson,* C–1–96–425, (S.D.Ohio January 16, 1997); *Hamblin v. Anderson,* 947 F.Supp. 1179 (N.D.Ohio 1996); *Zuern v. Tate,* 938 F.Supp. 468 (S.D.Ohio 1996).

7. Although compliance with § 2261(d) is not expressly required by § 2261(a) for Ch. 154 applicability, § 2261(d) in itself imposes a requirement on state post-conviction process: "No counsel appointed pursuant to subsections (b) and (c) to represent a State prisoner under capi-

For all the foregoing reasons, the Court holds that Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996 does not apply to this case.

**IT IS SO ORDERED.**